UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MICHELLE CANTATORE,<br>  *Petitioner*, | ) 3:22-CV-1232 (SVN)<br>)<br>) |
| v. | )<br>) |
| TIMETHA PULLEN,<br>  *Respondent*. | )<br>) July 27, 2023 |

## RULING AND ORDER ON RESPONDENT'S MOTION TO DISMISS

Sarala V. Nagala, United States District Judge.

Plaintiff Michelle Cantatore filed this putative class action on behalf of herself and all others similarly situated at what Plaintiff titles the Federal Prison Camp in Danbury, Connecticut ("FPC Danbury"). Plaintiff has sued the Warden of FPC Danbury, Timetha Pullen, in her individual and official capacities, and the Bureau of Prisons ("BOP"), alleging that Defendants violated the constitutional rights of all inmates housed at FPC Danbury based on the conditions of confinement to which the inmates were subjected during a COVID-19 related quarantine. In light of the ongoing COVID-19 health crisis, Plaintiff requests immediate release for all inmates at FPC Danbury with underlying medical conditions, and damages in the amount of twenty million dollars. Presently before the Court is Defendant's motion to dismiss. For the reasons discussed herein, Defendant's motion is GRANTED, and this case is DISMISSED.[1]

### I. FACTUAL BACKGROUND

The facts alleged in the complaint are accepted as true for the purpose of the present motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). FPC Danbury is a minimum-security prison facility housing

---

[1] In light of this ruling, Plaintiff's motion for emergency injunction ordering the immediate release of prisoners held at FPC Danbury, ECF No. 21, is DENIED AS MOOT.

more than ninety inmates. Compl., ECF No. 1 at 1–2.[2] On September 6, 2022, an inmate reported to the medical department and subsequently tested positive for COVID-19. *Id.* at 2. This led to Danbury testing each woman housed at the prison for COVID-19. *Id.* Upon receiving the results of these tests, twelve additional inmates tested positive for the virus. *Id.* At this time, all thirteen women who had tested positive were removed from the general population and moved into the FPC Danbury visiting room for a ten-day isolation period. *Id.*[3]

The thirteen inmates were moved to the visiting room on September 6, 2022, to begin their isolation. *Id.* at 5. At this same time, the remainder of the prison population was placed on quasi-quarantine status, this meant the inmates were allowed out of their rooms for only three hours a day. *Id.* Additionally, no one was allowed to go to work, educational classes, the cafeteria, TV rooms, or the gym. *Id.* Even worse, claims Plaintiff, those housed in the visiting room were given no access to phone, email, or any other methods of communication, and were not allowed any outdoor time. *Id.*

On September 8, 2022, another inmate suffering from COVID-19-like symptoms tested positive for the virus. *Id.* at 6. She was sent to the visiting room, which forced the entire group of women housed in that room to "restart" their ten-day isolation period. *Id.* As a result of this additional positive test, the rest of the inmates were once again tested, resulting in an additional eleven positive cases. *Id.* These women were also brought to the visiting room, but it quickly became apparent that there was not enough room to house the now twenty-five positive cases in

---

[2] The complaint does not contain individually numbered paragraphs. Therefore, the Court cites only to the page on which the specific allegation is contained.
[3] Plaintiff posits that the only possible way the virus could have made its way into Danbury was through a "shakedown" conducted by the corrections officers. ECF No. 1 at 3. Plaintiff herself admits, however, that these claims are not "a proven fact, but highly suspect." *Id.* at 4. The Court is not required to assume the truth of conclusory or speculative allegations. *See Twombly*, 550 U.S. at 555. In any event, because these facts are not relevant to the instant dispute, the Court expresses no opinion as to how the COVID-19 virus may have made its way into FPC Danbury.

that room.  *Id.*  Instead, Danbury decided to place these additional eleven women in the upstairs TV room to begin their isolation.  *Id.*

On September 12, 2022, another inmate complained of, and tested positive for, COVID-19.  *Id.*  Again, the remaining women were tested, and eight additional women tested positive.  *Id.*  This resulted in a total of thirty-two infected women.  *Id.* at 7.  Based on the number of people who had now tested positive, FPC Danbury staff decided to move all those who tested positive to a basement dormitory that had previously been empty due to it failing an unspecified inspection, resulting in it being marked "uninhabitable."  *Id.*  This decision not only resulted in the women being housed in a "decrepit, uninhabitable, dirty, dungeon-like basement dormitory," but it also combined women who had tested positive on September 6, 8, and 12, forcing all the inmates to restart their ten-day quarantine period.  *Id.*  Five days later, the remaining women at Danbury were tested again, resulting in five additional positive tests.  *Id.* at 8.  These five additional infected women were placed with the women who had already tested positive, once again restarting the mandatory ten-day quarantine period.  *Id.*

Plaintiff further asserts that the dormitory housing the infected women does not meet any standard safety protocol; that it has asbestos hanging from the ceiling; that black mold, mice, spiders, and insects run rampant; that there are broken windows and screens; that there is no temperature control; and that water seeps through the floors when it rains.  *Id.* at 9.  Additionally, the dorm is overcrowded, the ceiling leaks, the bunks are unstable, there is dust leftover from past construction, and the women are not allowed outside for fresh air.  *Id.* at 10.

Finally, Plaintiff asserts that this is the fourth quarantine of this type since 2021.  *Id.* at 11.  She asserts that there is no doubt a similar situation will arise again as COVID-19 continues to be a problem.  *Id.* at 12.

**II.     LEGAL STANDARD**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a case or cause of action for failure to state a claim upon which relief can be granted.  When determining whether a complaint states a claim upon which relief can be granted, highly detailed allegations are not required, but the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  This plausibility standard is not a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.*  In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted).

However, the Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *id.*, and "a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678.  Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).  Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Moreover, the Court bears in mind that a *pro se* litigant's filings must be liberally construed to raise the strongest arguments they suggest.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007);

4

*Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013); *see also Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010) (collecting cases regarding the "special solicitude" afforded to *pro se* litigants).

### III. CLASS ACTION ALLEGATIONS

Prior to addressing the merits of the instant action, the Court first discusses Plaintiff's attempt to pursue this action on behalf of a class. "It is well established that a *pro se* class representative cannot adequately represent the interests of other class members." *Rodriguez v. Eastman Kodak Co.*, 88 F. App'x 470, 471 (2d Cir. 2004) (summary order). As a result, courts in the Second Circuit regularly dismiss purported class actions brought by a *pro se* plaintiff. *See Baker v. Am. Soc'y of Composers, Authors & Publishers,* No. 21-CV-11126 (JMF), 2023 WL 2786778, at *2 (S.D.N.Y. Apr. 5, 2023) ("It is indeed true that a pro se plaintiff cannot assert claims on behalf of third parties"); *Chapman v. United States Dep't of Just.*, 558 F. Supp. 3d 45, 49 (E.D.N.Y. 2021) ("to the extent that [the *pro* se plaintiff] seeks to bring a class action on behalf of all other individuals similarly situated he may not do so"); *Tyus v. Semple*, No. 3:19-CV-73 (VAB), 2019 WL 1877076, at *2 (D. Conn. Apr. 26, 2019) (dismissing class action claims brought by *pro se* litigant); *Morneau v. Connecticut*, No. 3:07CV819 (JBA), 2008 WL 2704817, at *3 (D. Conn. July 7, 2008) (same). As Plaintiff, acting *pro se*, cannot bring a class action lawsuit, all claims alleged on behalf of a class are DISMISSED.

### IV. DELIBERATE INDIFFERENCE CLAIM

Turning next to the merits of Plaintiff's claim as it relates solely to her, Plaintiff claims the Defendants were deliberately indifferent to certain conditions of confinement that posed a risk of grave harm to Plaintiff.

Initially, the Court notes that, while 42 U.S.C. § 1983 entitles a person to money damages if a <u>state</u> official violates the person's constitutional rights, "Congress did not create an analogous

5

statute for federal officials." *Ziglar v. Abbasi,* 520 U.S. 120, 131 (2017). Nevertheless, in *Bivens v. Six Unknown Narcotics Agents*, 403 U.S. 388 (1971), the United States Supreme Court determined that district courts have the implied authority to award monetary damages where a federal official, acting in his or her individual capacity, has conducted an unreasonable search or seizure in violation of the Fourth Amendment of the Constitution. A claim under *Bivens* thus amounts to the "federal analog to suits brought against state officials under … § 1983." *Iqbal*, 556 U.S. 471, 485–86. But there are limitations on what *Bivens* and its progeny permit. First, *Bivens* does not authorize a suit against a federal agency. Thus, Plaintiff's claims against the BOP must be dismissed. *F.D.I.C. v. Meyer*, 510 U.S. 471, 486 (1994). Second, because an action against a federal officer in her official capacity is essentially a suit against the United States, such suits are barred under the doctrine of sovereign immunity, unless such immunity is waived. *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994). Here, there is no indication that sovereign immunity has been waived, so Plaintiff's claims against Defendant Pullen in her official capacity must also be dismissed.

Under current Supreme Court law, the *Bivens* remedy is limited, and expanding it beyond the limited contexts in which it has been recognized in the past is a "'disfavored' judicial activity." *Ziglar*, 582 U.S. at 135. The Supreme Court has recognized a *Bivens* remedy under the Fourth Amendment's Search and Seizure Clause, as mentioned above; the Eighth Amendment's Cruel and Unusual Punishment Clause, *see Carlson v. Green*, 446 U.S. 14, (1980) (implying a *Bivens* claim arising from prison officials' failure to treat an inmate's asthma that resulted in the inmate's death); and the equal protection component of the Fifth Amendment's Due Process Clause, *see Davis v. Passman*, 442 U.S. 228, (1979) (implying a Bivens claim for gender discrimination arising from the defendant congressman's decision to fire his female secretary). Beyond these three

factual circumstances, the Supreme Court has declined to recognize an implied cause of action for damages under the Constitution. *See Ziglar*, 582 U.S. at 135. Notably, an allegation of inhumane conditions of confinement is not one of the circumstances to which *Bivens* has previously been applied.

The Court is then confronted with the question of whether to extend *Bivens* to include claims based on an inmate's conditions of confinement. In examining this question, the Court must consider whether "there are special factors counselling hesitation in the absence of affirmative action by Congress." *Ziglar*, 582 U.S. at 136. To make this determination, the Court is required to "consider the risk of interfering with the authority of the other branches." *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020). The Court must "ask whether there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy, and whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id*. If, however, "Congress has created any alternative, existing process for protecting the injured party's interest that itself may amount to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." *Ziglar*, 582 U.S. at 137 (cleaned up).

Here, it is clear that Plaintiff is attempting to bring a *Bivens* claim related to her conditions of confinement that has not previously been recognized by the Courts. *See Rodriguez v. Easter*, No. 3:20-CV-1872 (SVN), 2022 WL 356478, at *8 (D. Conn. Feb. 7, 2022) (holding that a conditions of confinement claim does not fit under one of the established *Bivens* contexts). Although the Supreme Court has recognized that a *Bivens* action can be maintained under the Eighth Amendment based on failure to provide adequate medical treatment, the case presently before the Court alleges a claim based on the conditions of confinement faced by Plaintiff. While

both claims fall under the Eighth Amendment, the fact that certain violations of the Eighth Amendment can be pursued via a *Bivens* claim does not mean *all* violations of the Eighth Amendment can be so pursued. *Gonzalez v. Hasty*, 269 F. Supp. 3d 45, 64 (E.D.N.Y. 2017), *aff'd*, 755 F. App'x 67 (2d Cir. 2018) ("Although the Supreme Court recognized a *Bivens* remedy under the Eighth Amendment in *Carlson*, this does not mean all Eighth Amendment claims have a Bivens remedy."). A claim based on the conditions of an inmate's confinement is meaningfully different from a claim based on failure to administer proper medical treatment.

Additionally, there are factors that counsel against the Court expanding *Bivens* to include a claim for conditions of confinement against a federal official. In 1995, Congress passed the Prison Litigation Reform Act, which governs how litigation by prisoners is to proceed. In passing that law, Congress "had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs." *Ziglar*, 582 U.S. at 148. If Congress has wished to provide prisoners the ability to bring an action such as this one, it could have done so when passing the Prison Litigation Reform Act. Instead, it chose not to. Further, the Federal Tort Claims Act and a petition for writ of habeas corpus provide alternative means through which prisoners can seek redress for the types of harms alleged in this suit. Finally, if this Court were to allow this new type of *Bivens* action, it would potentially have the impact of expanding the judiciary's role in prison administration. The task of prison administration has been reserved to the legislative and executive branches, and further involving the judiciary implicates serious separation of powers concerns. *Rodriguez*, 2022 WL 356478, at *7. It is thus clear that there are several factors that counsel against the Court creating a new *Bivens* cause of action for conditions of confinement.

This conclusion is in line with that of numerous courts in this circuit, which have considered, and refused, to extend *Bivens* to include a conditions of confinement claim. *See White*

*v. Hess,* No. 14-CV-03339 (CBA)(LB), 2020 WL 1536379, at *7 (E.D.N.Y. Mar. 31, 2020) (declining to extend *Bivens* to federal prisoner's non-medical conditions of confinement claim); *Gonzalez v. Hasty,* 269 F. Supp. 3d 45, 63–65 (E.D.N.Y. 2017) (declining to extend *Bivens* to Eighth Amendment non-medical conditions of confinement claim regarding conditions in restrictive housing). This Court agrees with the holdings therein and will not extend *Bivens* to include a previously unrecognized cause of action based on conditions of confinement. Therefore, Plaintiff's complaint fails to state a cognizable cause of action and must be dismissed.

## V. CONCLUSION

For the reasons discussed herein, Defendant's motion to dismiss is GRANTED, Plaintiff's claims are dismissed in their entirety.

**SO ORDERED** at Hartford, Connecticut, this 27th day of July, 2023.

 /s/ Sarala V. Nagala  
SARALA V. NAGALA  
UNITED STATES DISTRICT JUDGE